IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| STEVEN CRAIG GLICKMAN, ) <br> on behalf of himself and all others ) <br> similarly situated, ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> EXPERIAN INFORMATION SOLUTIONS, ) <br> INC. ) <br> ) <br> Defendant. ) <br> ) | Case No. <br><br> CLASS ACTION <br><br><br> DEMAND FOR JURY |

## CLASS ACTION COMPLAINT

### PRELMINARY STATEMENT

On behalf of himself and all others similarly situated, Plaintiff Steven Craig Glickman ("Plaintiff" or "Mr. Glickman"), by and through his attorneys, The Adkins Firm, P.C. and Francis & Mailman, P.C., respectfully allege as follows:

### NATURE OF THE ACTION

1. This is a consumer class action brought for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA"), against Experian Information Solutions, Inc. ("Defendant" or "Experian"), a national consumer reporting agency. In violation of the FCRA, Experian prepares and furnishes consumer reports that include tax liens that: (a) the FCRA prohibits Experian from reporting; and (b) that have been paid, satisfied or released, but are not reported by Defendant as paid, satisfied or released.

## PARTIES

2. Plaintiff Steven Craig Glickman is an adult individual residing in Dallas, Texas, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

3. Defendant Experian is a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(f). Defendant is authorized to do business in the State of Texas, has substantial contacts in this District, and is headquartered in Costa Mesa, California.

## JURISDICTION & VENUE

4. This Court has jurisdiction over this matter based upon 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

6. Defendant is one of the "big three" consumer reporting agencies in the United States.

7. Defendant sells consumer reports (commonly called "credit reports") about millions of consumers annually.

8. Defendant is regulated by the FCRA.

9. Upon information and belief, for several years Defendant has obtained its information about bankruptcies, civil judgments and tax liens (*i.e.*, "public records" information) from LexisNexis Risk & Information Analytics Group, Inc. ("LexisNexis"), First Advantage Corporation, a Symphony Technology Group company ("First Advantage"), and or other private businesses that it calls "vendors," which furnish such information to national CRAs.

10. Experian has not directly retrieved public records from courthouses or actual government offices for several years.

11. Nevertheless, on its credit reports that it provides to consumers, Experian falsely still lists the names and addresses of courthouses or other government offices as the true "source" of its public records information.

12. The public record information that Defendant receives from its vendors is not the actual court or taxing authority records. Rather, it receives a distilled version of those records, which does not include all of the information available at the actual courthouses or government offices where the true records are housed.

13. Defendant knows that both it and its public records vendors such as LexisNexis and First Advantage make mistakes in the distilled public records information that is acquired for purposes of credit reporting.

14. Disclosure of the true source of a CRA's information is vital so that certain credit reporting errors that originate at the source can be corrected, and so that consumers always know who is furnishing important credit information about them.

15. Nevertheless, and despite the clear mandate of FCRA § 1681g(a)(2), Experian never discloses to consumers the true sources of the public records information that it collects and reports about them.

16. Defendant conceals that its sources for public record information are private vendors that supply to it only incomplete information, which can be inaccurate or not up to date.

17. In this regard, Defendant is more interested in maintaining the appearance that it receives actual public records from true government sources and in protecting its low-cost private

sources of public record data than in disclosing to consumers vital information that Congress requires CRAs to disclose in FCRA § 1681g(a)(2).

18. Experian also routinely fails to report accurate information about tax liens, including the most up-to-date status.

19. Defendant also routinely fails to remove tax liens from consumers' reports when those judgments have become nullities.

20. In 2015 and 2016, Experian delivered reports about Mr. Glickman to multiple end users, each of which used Experian's report to evaluate Mr. Glickman's creditworthiness.

21. On or about May 27, 2016, Mr. Glickman requested and received a copy of his "credit file" and or "consumer credit report" from Experian. The Experian report contained inaccurate information, including but not limited to, reporting that Mr. Glickman had two outstanding tax liens in Collin County in the amounts of $14,258 and $31,808, as well as an outstanding tax lien recorded in Dallas County in the amount of $98,413.

22. The tax lien information Experian included on Mr. Glickman's report was woefully deficient. The tax liens recorded in Collin and Dallas counties tax lien had been satisfied and released, approximately two (2) years earlier. Certificates of Release for the tax liens had been filed and recorded in the public record during March 2014.

23. Despite the release of lien information being recorded in the public record, and pursuant to its usual and systematic practice, Defendant did not update its records to show that the liens had been paid and released.

24. The FCRA provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

25. At all times pertinent hereto, Defendant's conduct was a result of its deliberate policies and practices, was willful, was intentionally accomplished through intended procedures, and was carried out in reckless disregard for a consumer's rights as set forth in sections 1681c(a)(3), 1681e(b) and 1681g(a)(2) of the FCRA. Upon information and belief, Experian's collecting and reporting the initial entry of tax liens is believed by it to be of greater economic value than collecting and reporting information indicating that a tax lien has been paid, satisfied or released.

26. The reporting of Mr. Glickman's tax lien by Experian was inaccurate and occurred because Experian failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of his consumer report. Specifically, Experian does not follow the same automated and systematically rigorous processes to obtain all satisfactions and releases of tax liens that it follows to obtain the original tax lien information.

27. Indeed, Experian follows no procedure which assures that, when a tax lien or civil judgment is paid, satisfied or released, the updated status is promptly obtained and reflected upon the consumer's credit report.

28. Instead, Experian continues to report the tax lien or civil judgment balance that it originally received through its vendor. In Plaintiff's case, Experian did not receive or report any updated information as to the status of the lien in 2016, despite the fact that the tax liens were released in early 2014.

**29.** At all times pertinent hereto, Defendant was acting by and through its agents, servants and or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

## **CLASS ACTION ALLEGATIONS**

30. Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

31. Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Classes:

   a. All natural persons who: (i) had a tax lien recorded in the State of Texas; (ii) the tax lien appeared on an Experian consumer report dated within two years prior to the filing of this Complaint; (iii) the State of Texas public record indicated that the tax lien had been paid, satisfied or released on a date prior to the date of the Experian consumer report; and (iv) the Experian consumer report identified the tax lien as unpaid or with an unpaid balance (hereafter the "Two-year Failure to Update Class").

   b. All natural persons who: (i) had a tax lien recorded in the State of Texas; (ii) the tax lien appeared on an Experian consumer report dated within five years prior to the filing of this Complaint; (iii) the State of Texas public record indicated that the tax lien had been paid, satisfied or released on a date prior to the date of the Experian consumer report; and (iv) the Experian consumer report identified the tax lien as unpaid or with an unpaid balance (hereafter the "Five-year Failure to Update Class").

   c. All natural persons residing within the State of Texas to whom, beginning two years prior to the filing of this Complaint and continuing through the resolution of this action, Experian provided a credit file disclosure which included any civil

judgment, tax lien or bankruptcy (hereafter the "Two-year Source Disclosure Class").

    d.    All natural persons residing within the State of Texas to whom, beginning five years prior to the filing of this Complaint and continuing through the resolution of this action, Experian provided a credit file disclosure which included any civil judgment, tax lien or bankruptcy (hereafter the "Five-year Source Disclosure Class").

32.    Plaintiff reserves the right to amend the definitions of the Classes based on discovery or legal developments.

33.    **Numerosity. Fed. R. Civ. P. 23(a)(1).** The Class members are so numerous that joinder of all is impractical. Although the precise number of Class members is known only to Experian, there are tens of thousands of recorded tax liens in Texas, and the names and addresses of the Class members are identifiable through documents maintained by Experian and through publicly available records.

34.    **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Classes, and predominate over the questions affecting only individual members. The common legal and factual questions include, among others:

    a.    Whether Defendant willfully violated the FCRA by failing to follow reasonable procedures to assure the maximum possible accuracy of the Texas tax lien information it reported; and

    b.    Whether Defendant violated the FCRA by misrepresenting the true source of its public records information from its consumer file disclosures.

35. **Typicality. Fed R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each Class member, which all arise from the same operative facts and are based on the same legal theories. Experian reports tax liens that have been paid, satisfied or released without reporting their paid, satisfied or released status. Plaintiff has the same claims for statutory, actual and punitive damages that he seeks for absent class members.

36. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the Classes. His interests are aligned with, and are not antagonistic to, the interests of the members of the Classes he seeks to represent. He has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of members of the Classes.

37. **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual Class members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expenses to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court

by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## CAUSES OF ACTION

### COUNT I

### (Two-Year Failure to Update Class Claim)

38. Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

39. Experian failed to comply with 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the tax lien information in the consumer reports it prepared regarding Plaintiff and the other Two-Year Failure to Update Class members.

40. Pursuant to 15 U.S.C. §§ 1681n and o, Experian is liable to Plaintiff and all Class members for its failure to comply with FCRA § 1681e(b), in an amount equal to the sum of (1) damages of not less than $100 and not more than $1,000 per violation; (2) actual damages; (3) punitive damages in an amount to be determined by the jury; (4) attorney's fees; and (5) litigation costs, as well as such further relief as may be permitted by law.

### COUNT II

### (Five-Year Failure to Update Class Claim)

41. Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

42. Experian failed to comply with 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the tax lien information in the consumer reports it prepared regarding Plaintiff and the other Five-Year Failure to Update Class members.

43. Pursuant to 15 U.S.C. §§ 1681n and o, Experian is liable to Plaintiff and all Class members for its failure to comply with FCRA § 1681e(b), in amount equal to the sum of (1) damages of not less than $100 and not more than $1,000 per violation; (2) actual damages; (3) punitive damages in an amount to be determined by the jury; (4) attorney's fees; and (5) litigation costs, as well as such further relief as may be permitted by law.

## COUNT III

### (Two-Year Source Disclosure Class Claim)

44. Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

45. Defendant failed to comply with 15 U.S.C. § 1681g(a)(2) by failing to accurately and completely disclose the true source of its public records information about consumers in their consumer file disclosures.

46. Pursuant to 15 U.S.C. §§ 1681n and o, Experian is liable to Plaintiff and all Class members for its failure to comply with FCRA § 1681g(a)(2), in an amount equal to the sum of (1) damages of not less than $100 and not more than $1,000 per violation; (2) actual damages; (3) punitive damages in an amount to be determined by the jury; (4) attorney's fees; and (5) litigation costs, as well as such further relief as may be permitted by law.

## COUNT IV

### (Five-Year Source Disclosure Class Claim)

47. Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

48.     Defendant failed to comply with 15 U.S.C. § 1681g(a)(2) by failing to accurately and completely disclose the true source of its public records information about consumers in their consumer file disclosures.

49.     Pursuant to 15 U.S.C. §§ 1681n and o, Experian is liable to Plaintiff and all Class members for its failure to comply with FCRA § 1681g(a)(2), in an amount equal to the sum of (1) damages of not less than $100 and not more than $1,000 per violation; (2) actual damages; (3) punitive damages in an amount to be determined by the jury; (4) attorney's fees; and (5) litigation costs, as well as such further relief as may be permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Classes pray for relief as follows:

a. An order certifying the case as a class action on behalf of the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

b. A permanent injunction requiring Defendant to: (1) cease reporting public record information about Texas consumers; (2) cease reporting public record information about Texas tax liens and civil judgments; (3) disclose the true source from which it obtains public records information included on its reports; (4) regularly update the public record information it obtains and reports about Texas consumers on at least a monthly basis;

c. An award of statutory, actual and punitive damages for Plaintiff and the Classes;

d. An award of pre-judgment and post-judgment interest as provided by law;

e. An award of attorney's fees and costs; and

f. Such other relief as the Court deems just and proper.

## **TRIAL BY JURY**

Plaintiff hereby requests a trial by jury on those causes of action where a trial by jury is allowed by law.

Dated this 29th day of June, 2017.

Respectfully submitted,

**THE ADKINS FIRM, P.C.**

*/s/ Micah S. Adkins*
Micah S. Adkins (TX Bar No. 24088777)
**THE ADKINS FIRM, P.C.**
2 Perimeter Park South
Suite 405 E
Birmingham, Alabama 35243
Telephone:    205.206.6718
Facsimile:    205.208.9632
Email: MicahAdkins@ItsYourCreditReport.com

James A. Francis (motion for *pro hac vice* forthcoming)
John Soumilas (motion for *pro hac vice* forthcoming)
**FRANCIS & MAILMAN, P.C.**
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, Pennsylvania 19110
Telephone:    215.735.8600
Facsimile:    215.940.8000
Email: jfrancis@consumerlawfirm.com
           jsoumilas@consumerlawfirm.com
*Attorneys for Plaintiffs*